IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHNNY GRAYSON,

              Petitioner,

v.                                                   Civil Action No. 5:09cv53
                                                   Criminal Action No. 5:08cr46
                                                   (Judge Stamp)

UNITED STATES OF AMERICA,

              Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On May 20, 2009, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1] He did not file a memorandum in support. The

---

[1] Dkt.# 32. Contemporaneous with his § 2255 motion, petitioner also filed a Motion Requesting Approval for Jailhouse Lawyer (Dkt.# 34), seeking the Court's permission for one Douglas Van Vleet, a fellow prisoner, to act as his jailhouse lawyer, and requesting that Van Vleet be given the same authority to act as that of an actual attorney. Thereafter, over the next six weeks, petitioner and VanVleet filed a series of motions and letters to the Court: (1) Motion to Send Counsel Douglas Van Vleet a Copy of Defendant Johnny Graysons [sic] [entire criminal case] file (Dkt.# 42); (2) Defendants [sic] Motion for Appointment of Counsel Nunce [sic] Pro Tunce [sic], seeking the appointment of Mr. Van Vleet under 18 U.S.C. § 3006A on petitioner's behalf in his § 2255 action (Dkt.# 43); (3) a letter from Mr. Van Vleet requesting a current and updated docket sheet for the petitioner's civil habeas action and his underlying criminal case (Dkt.# 45); (4) Motion to Request Expedite [sic] Order Requesting Douglas VanVleet to Assist the Defendant, Johnny Grayson, as his jailhouse lawyer (Dkt.# 46); (5) Motion to Join as a Third Party Petitioner, in which Mr. Van Vleet sought to be added as a third party in this case under Rule 19(B) (Dkt.# 47); and (6) Motion for Request of Trial and Court Records and to Proceed *Pro Se* and In *Forma Pauperis*, in which the petitioner requested a copy of his plea agreement and sentencing transcripts. (Dkt.# 51). Because petitioner provided nothing to establish Van Vleet's status as a licensed attorney, his Motion Requesting Approval for Jailhouse Lawyer (Dkt.# 34) and Motion for Appointment of Counsel Nunce [sic] Pro Tunce [sic] (Dkt.# 43) were denied by Order entered on July 7, 2009 (Dkt.# 54). Accordingly, his Motion to Send Counsel Douglas Van Vleet a Copy of Defendant Johnny Graysons [sic] [entire criminal case] file (Dkt.# 42), and his Motion to Request Expedite [sic] Order Requesting Douglas Van Vleet to Assist the Defendant, Johnny Grayson, as his Jailhouse Lawyer (Dkt.# 46) were both denied as moot, as was Van Vleet's letter request for a copy of petitioner's docket sheets. (Dkt.# 45). Likewise, Van Vleet's Motion to Join as a Third Party Petitioner Under Rule 19(B) (Dkt.# 47) was also denied, since Van Vleet neither met the Rule 19(a) joinder requirements, nor was he indispensable to the case. Petitioner's Motion for Request of Trial and Court Records and to Proceed *Pro Se* and In *Forma Pauperis* (Dkt.# 51) was granted to the extent he was seeking a copy of plea agreement; it was denied in all other respects, because he had not made the requisite showing of need. Further, the Court held that it would not accept any further filings by VanVleet, directing the Clerk to return, without filing, any further documents submitted by Van Vleet on behalf of petitioner. Accordingly, Van Vleet's subsequent motions on behalf of petitioner, filed *nunc pro tunc* June 26, 2009, were all dismissed as moot in early February 2010: a June 15, 2010 Motion: Petitioner, Douglas Van Vleet Request [sic]

1

Government filed its response on August 7, 2009.[2] Petitioner did not file a reply.

## II. Facts

### A. Conviction and Sentence

On July 16, 2008, petitioner signed a plea agreement, agreeing to plead guilty to a one-count Information,[3] aiding and abetting and causing the interstate travel by a person from Weirton, WV to Steubenville, Ohio, with the intent to promote a heroin-trafficking activity ["ITAR"], in violation of Title 18, U.S.C. § § 1952(a)(3) and (2). (Dkt.# 6 at 1). The maximum penalty for his plea to the charge was specified as imprisonment for a period of not more than five (5) years, a $250,000.00 fine, and not more than three years supervised release. (Id. at 2). Petitioner also agreed to forfeit any interest he might have in certain vehicles, currency, firearms and ammunition, described in paragraph 13 of the plea agreement. (Id. at 5 - 6). The parties stipulated and agreed that petitioner's total drug relevant conduct was at least 400 grams of heroin but less than 700 grams of heroin. (Id. at 2). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 11. Mr. Grayson is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence 60 months or less (or the manner in which that sentence was determined) including any enhancements under Section 4B1.1 of the Guidelines, on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement. The defendant also waives his right to challenge any sentence 60 months or less or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The United States waives the right to appeal. Both parties have the right during any appeal to argue in support of the sentence.

---

Permission to Amend § 2255 (Dkt.# 68); a June 24, 2009 letter motion to Notify the BOP of Van Vleet's joinder (Dkt.# 71); a June 24, 2009 Motion for Discovery and Inspection (Dkt.# 74); a July 1, 2009 Motion to request [sic] 90 Day Extention [sic] and a request to order documents (Dkt.# 64).

[2] Dkt.# 60.

[3] Petitioner was originally charged in one count of a 22-count superseding indictment (5:08cr22, Dkt.# 188); that count was ultimately dismissed at his sentencing hearing.

(Id. at 4).

On July 22, 2008, the petitioner, then aged 27 and having an 11th grade education, entered his plea in open court. (Dkt.# 58 at 4). Petitioner testified that he could read, write and understand English; he denied having taken any medication, drug or alcohol within the previous 24 hours; denied any hearing impairment or other disability preventing him from full participation in the hearing; and denied any treatment for mental illness or narcotic drug addiction. (Id. at 4 - 5). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud in open court each paragraph of the plea agreement, including the paragraph 11 *supra*. (Id. at 5 - 11). The Court specifically asked petitioner if he understood the waiver of his appellate and post-conviction relief rights and petitioner indicated that he did. (Id. at 12). The Court asked petitioner whether he and his counsel had reviewed the plea agreement in detail before he signed it, and petitioner stated that they had. (Id. at 12).

The Court then informed petitioner that the maximum sentence for the crime to which he was pleading would be imprisonment for not more than five years, a fine of not more than $250,000, and a term of not more than three years of supervised release (Id. at 14, 15 and 22). The Court advised petitioner that the sentence he ultimately received might be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 16 - 17). The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone at that time and petitioner indicated that he did. (Id. at 26). The Court summarized all of the rights that petitioner was giving up by pleading guilty. (Id. at 20 - 22). To establish a factual basis for the plea, the Government presented the testimony of Detective John Robinson of the Hancock County Sheriff's Department, a member of the Hancock-Weirton Drug Task Force. (Id. at 22 - 25). The petitioner did not contest the factual basis of the plea.

After the factual basis for the plea was presented, the petitioner entered his plea. The Court asked petitioner if he was in fact guilty of the crime as charged in the Information and petitioner advised the Court that he was. (Id. at 26 - 27). The Court asked petitioner if his lawyer had done a good job representing him

and he responded "[y]es, sir." (Id. at 26). The Court further asked petitioner whether he thought that there was any thing he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[n]o, sir." (Id.). At the conclusion of the hearing, the Court determined that: petitioner was competent; he had made his plea freely and voluntarily, with full understanding of its consequences; that there was a basis in fact for the crime charged, and that the elements of the crime had been established. (Id. at 27). Petitioner did not object to the Court's finding.

On October 15, 2008, petitioner appeared before the court for sentencing. He was found to have a base offense level of 28. After a two-level reduction for the "safety valve" relief afforded by U.S.S.G. 5C1.2, another two-level reduction for acceptance of responsibility, and a further third level for acceptance of responsibility, he had a total offense level of 23. (Dkt.# 59 at 4). With a criminal history category of I, the Court found that the sentence guidelines called for a mandatory minimum of forty-six to fifty-seven months imprisonment. (Id.). The range of supervised release was two to three years and the fine range was $10,000 - $100,000. (Id.). There were no objections to the PSR by either the Government or defense counsel. Petitioner exercised his right to allocute, accepted responsibility for his actions and apologized to the Court and his family. (Id. at 6). Defense counsel asked that petitioner participate in the long-term drug program while incarcerated and that he be incarcerated as close to his family as possible. The Government asked for a sentence at the lower end of the Guideline. (Id.). Taking all necessary information into consideration, the Court sentenced petitioner to serve a total term of 46 months imprisonment, the lowest end of the guideline. (Id. at 7). The Court specifically reminded petitioner that since his plea agreement waived his appellate and post-conviction relief rights in the event that he received a sentence of 60 months or less, because his sentence was under 60 months, his waiver was final.

**B.**     **Direct Appeal**

Petitioner did not file a direct appeal of his conviction.[4]

C. **Federal Habeas Corpus**

**Petitioner's Contentions (Dkt.# 32)**

Petitioner raises four grounds in his § 2255 motion:

1) the sentence he received was improperly calculated because (a) he was not given credit for the time served since his initial appearance and (b) his medical condition was not considered;

2) the plea agreement had mistakes in it: (a) the PSR revealed that there were two charges in the plea and the plea agreement only listed one; and (b) the stipulated drug amount in the plea agreement was inaccurate, because the amount charged was different than what was agreed upon; and

3) counsel was ineffective for: (a) not explaining the plea agreement to him; (b) not coming to the jail and speaking to him in person; and (c) not advising him of the right to appeal.

**Government's Response (Dkt.#60)**

The Government contends that petitioner knowingly waived his right to bring a § 2255 motion.

Waiver notwithstanding, the District Court did properly consider petitioner's sentence. Petitioner's claim that he was not given credit for time served has no merit because he cannot be given credit for time served on an unrelated state charge. Furthermore, the District Court did consider his medical condition. Petitioner was not eligible for a downward departure under U.S.S.G. 5H4.1 because he does not have an "extraordinary physical impairment." Additionally, here, where the Bureau of Prisons is capable of accommodating a prisoner's medical needs, downward departure under U.S.S.G. 5H4.1 is not appropriate.

Petitioner's claim that his plea agreement contained errors is mistaken. Although both the plea agreement and the PSR do mention the second count, heroin distribution conspiracy, in the context of its being dismissed upon acceptance of the plea by the District Court, both the plea agreement and the PSR

---

[4] Petitioner did, however, later file an appeal of the District Court's April 24, 2009 Order (Dkt.# 23) denying his March 30, 2009 Motion Requesting this Court to Order the Defendant Home Confinement (Dkt.# 19). The District Court's decision was affirmed by unpublished per curiam opinion on October 7, 2009. (Dkt.# 61).

actually reference him being charged with only the one count he pled to, the "ITAR" violation. Nor is there any substance to petitioner's claim that the drug amount stipulated to in the plea agreement was different than the drug amount specified in the original charge. Pursuant to 18 U.S.C. § 1952(a)(2), the ITAR violation he was charged with does not require a drug amount to be specified, because that is not an element of the crime. However, because the ITAR violation was for narcotics, petitioner's sentencing guidelines were driven by drug relevant conduct. The superseding indictment charged petitioner with a heroin distribution conspiracy involving a kilogram or more of heroin, but because petitioner cooperated, he was able to plead to the lesser offense of ITAR, and a relevant conduct figure of 400-700 grams of heroin. Petitioner's reference to the drug amount in the conspiracy charge is irrelevant; he did not plead to, nor was he sentenced for that charge. He stipulated to a drug relevant conduct amount of at least 400 and no more than 700 grams of heroin.

Finally, petitioner's claim of ineffective assistance of counsel has no merit because he was not prejudiced by counsel's alleged failure to advise him of his right to appeal. Pursuant to the plea agreement, petitioner knowingly and intelligently waived his appellate and collateral attack rights, so long as his sentence was under 60 months. Because his sentence was only 46 months, his waiver of appeal was final. He cannot show that any alleged error by counsel in this regard was serious or egregious. At best, even assuming *arguendo,* that counsel did not advise him of his appellate rights, any such error was harmless because petitioner had already validly waived the right to file an appeal.

### D.     **Recommendation**

Based upon a review of the record, the undersigned recommends that petitioner's § 2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack his conviction and his ineffective assistance of counsel claim, being an unsupported conclusory allegation, has no merit.

## III. Analysis

### A.     **Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

**B.   Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can

fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless

> because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 58 at 12). Further, petitioner specifically testified that he understood that, incident to his plea agreement, he was waiving his right to appeal his sentence or to collaterally attack it, if it was within the statutory maximum of sixty months. (Id.). His sentence was 46 months imprisonment. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his sentence and to file this § 2255 motion, thus precluding a review of the merits of most of its claims. However, since petitioner has alleged that counsel was ineffective after

the entry of the guilty plea, for failing to advise him of his right to appeal, that claim will be given review.

**Ground 3(c): Whether counsel was ineffective for failing to advise petitioner of the right to appeal.**

Petitioner's entire § 2255 claim in this regard is merely that "I was not advised by my attorney I could appeal on direct appeal [sic]." Petitioner did not file a memorandum in support of his § 2255 motion, nor did he provide an affidavit, elaborating on this claim in any way.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

11

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

Further, in Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, at 478.

Here, the petitioner merely asserts that he did not file an appeal because his attorney never advised him of the right to do so. (Dkt.# 32 at 3). He does not provide any evidence, let alone even allege, that he ever actually *instructed or requested* that his attorney file an appeal on his behalf, that counsel refused to do so, or that counsel promised to do so and then did not follow through.

Habeas corpus petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). The petition must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992) *cert. denied*, 507 U.S. 923 (1993), *abrogation on other grounds recognized*, Yeatts, v. Angelone, 166 F.3d 255 (4th Cir. 1999). Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, *supra* at 1136.

Petitioner's claim of ineffective assistance of counsel for failing to advise him of his appellate rights is merely a bare allegation, completely unsupported by any facts. Petitioner has produced no evidence showing that he ever actually asked or instructed his attorney to file an appeal, let alone that his attorney

12

performed inadequately by refusing or failing to file an appeal on his behalf. He has not shown that his attorney made any error at all, let alone that counsel made an error so serious that he failed to function as his counsel under the Sixth Amendment. Nor has he shown that he was prejudiced in any way by counsel's alleged failure. Because this claim is a conclusory allegation lacking any factual support, it should be denied.

## V. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING this case with prejudice**.

Further, petitioner's request for an evidentiary hearing should be **DENIED** as moot.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to counsel of record via electronic means.

DATED: September 15, 2010

/s/ John S. Kaull
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

13